UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MERIDIAN BULK CARRIERS, LTD,

         Plaintiff,

                      Case No. 8:07-cv-1422-T-33TGW
v.

KINDER MORGAN BULK TERMINAL,
INC.,
         Defendant.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendant Kinder Morgan Bulk Terminal, Inc.'s Motion for Summary Judgment (Doc. # 21), which was filed on September 25, 2008.  Plaintiff Meridian Bulk Carriers, Ltd filed a Response to Defendant's Motion for Summary Judgment on October 27, 2008. (Doc. # 26).

After considering the record and the parties' submissions, the Court denies the motion for summary judgment for the reasons that follow.

**I.**     **<u>Background</u>**

This admiralty case was initiated by Plaintiff Meridian Bulk Carriers, LTD ("Meridian") against Defendant Kinder

-1-

Morgan Bulk Terminals, Inc. ("Kinder") after the discovery of a hole in the vessel M/V Gang Qiang (the "Vessel"). The hole, located in the tank top of hold number three, was approximately seven by three inches in diameter.[1] The primary issue in this case is the identity of the individual or entity who caused the hole to develop in the Vessel. While there are only two parties in this case -- Meridian and Kinder -- there are a number of individuals and entities involved in the case.

### A.   The Parties and Related Entities

Plaintiff Meridian, a foreign corporation with its principal place of business in the Marshall Islands, is engaged in the business of chartering commercial cargo vessels. (Compl. Doc. # 1 at ¶ 2). Meridian chartered the Vessel from Longwood Maritime, Inc. (the "Owner") in April 2005, for a thirteen-month period at the rate of $30,000 per day.[2] (Santos Dep. Doc. # 19-2 at 11:6; 30:16-18).

---

[1] The Vessel has five "holds." A "hold" is "the entire cargo space in the hull of a vessel" or "any individual compartment of such cargo spaces, closed by bulkheads and having its own hatchway." Webster's New Universal Unabridged Dictionary 676 (1994).

[2] Ivan Santos, Meridian's corporate representative, testified during his deposition that "COSCO China" is the "ultimate owner" of the Vessel. (Santos Dep. Doc. # 19-2 at 31:10-18). The

-2-

Meridian subchartered the Vessel to International Trade Investments ("ITI"). (Id. at 12:9-13).  It appears that ITI contracted with Steelport of Florida, Inc. ("Steelport") to load the Vessel with scrap metal, and Steelport, in turn, hired Kinder as stevedore to load the Vessel with 20,000 tons of scrap metal in Tampa, Florida.[3] (Franceschi Dep. Doc. # 20-2 at 13:17-25, 14:1-2; Dilts Decl. Doc. # 21-2 at ¶ 3).  The goal of the operation was to deliver the scrap metal to Korea.

On April 27, 2005, Captain Vjeko Franceschi performed a four-hour pre-loading inspection of the Vessel. (Franceschi Dep. Doc. # 20-2 at 35:11-25).  The inspection was conducted by Captain Franceschi in full day-light with all of the hatch-covers open. (Id.).  Captain Franceschi's "Pre-Loading Condition Report on the M/V Gang Qiang" is on file, and it demonstrates that, at the time of the inspection, there were no holes in hold number three.[4] (Doc. # 19-3 at 19-20).

_____

relationship between COSCO China and Longwood Maritime, Inc. is not apparent from the present record.

[3] A "stevedore" is "A person or company that hires longshore and harbor workers to load and unload ships." Black's Law Dictionary 1454 (8th ed. 2004).

[4] Captain Franceschi's report did describe some light corroding in the tank top of hold number three and also noted that

From April 27, 2005, through May 4, 2005, Kinder's stevedores loaded scrap metal onto the Vessel. (Dilts Decl. Doc. # 21-2 at ¶ 5).   Brian Dilts, the manager and yard supervisor for Kinder, submits in his declaration that "Kinder Morgan loaded the Vessel in accordance with the Stowage Plan and properly touched the tank top through the process of 'bedding down.'" (Id. at ¶ 7).   Dilts describes the process of bedding down and the manner in which Kinder loaded the Vessel as follows:

> Kinder Morgan's crane operator picked up scrap from the pile with the crane's grapple, carried it to the ship, and lowered the grapple to the floor of the ship's hold.   At that point, the operator released the grapple, thereby depositing the scrap into the ship's hold.   The crane operator gently laid the first layer of scrap metal directly on the tank top in a pyramidal shape.   The operator then used the growing scrap pile as a cushion to land scrap metal so that it did not damage the vessel's hold.   This process took place at the direction of the ship's master and was overseen by the ship's crew and by a Kinder Morgan watchman who assisted the crane operator.

(Id. at ¶ 7).

Further, Dilts asserts that "Kinder Morgan posted a watchman at the top of the hold to oversee the initial loading process (known as bedding down).   Such watchman

---

the tank top was "free of heavy structural damages and deep dents." (Doc. # 19-3 at 20).

would have become aware if the damage alleged in this case, namely a hole in tank top three, occurred during loading in Tampa." (Id. at ¶ 9).  Furthermore, Dilts explains, "Kinder Morgan has been involved in other incidents where we caused a hole to the tank top of a hold during the loading of scrap metal.  It makes an extremely loud noise and causes the ship to vibrate.  When this happens, everyone on the ship becomes aware of the damage.  This did not happen during the loading of the [Vessel] in Tampa." (Id. at ¶ 10).

Captain Franceschi similarly testified that, if a tank top was damaged during loading, the Vessel's crew would have known because the ship would vibrate and rattle, and this did not happen during loading. (Franceschi Dep. Doc. # 20-2:56:6-17; 96:22-25; 97:1-3; 103:17-22).

After being loaded with 20,000 tons of scrap metal in Tampa, Florida, the Vessel traveled to Norfolk, Virginia to be loaded with more scrap metal.[5]  In addition, in Norfolk, Virginia, a bulldozer was loaded on the Vessel and placed on top of the scrap metal pile in hold number three. (Franceschi Dep. Doc. # 20-2 at 106:1-2).  From Norfolk,

---

[5] The Vessel was loaded with approximately 18,000 tons of scrap metal in Norfolk, Virginia. (Franceschi Dep. Doc. # 20-2 at 105:16-25; Doc. # 19-3 at 42).

Virginia, the Vessel traveled to Korea.  The Vessel arrived in Korea on June 21, 2005, where it waited with its anchor set for approximately three weeks before unloading commenced on July 11, 2005. (Doc. # 19-3 at 42).  Hold number three of the Vessel was not completely unloaded until July 23, 2005 (nearly three months after the loading commenced in Tampa, Florida).

After the scrap metal was unloaded in Korea, the Vessel's master discovered a hole in the tank top of hold number three of the Vessel. (Doc. # 19-3 at 42). Thereafter, the Vessel's Owner initiated an arbitration action against Meridian.  The Owner and Meridian settled, and Meridian paid $179,935.18 to the Owner. (Santos Dep. Doc. # 19-2 at 44:1-17).  Of the $179,935.18, approximately $32,000 was attributed to the cost of the repair of the Vessel, and $147,935.18 was attributed to "off-hire" days for the Vessel.[6] (Id.).

During Santos' deposition, he testified that it was doubtful that the damage to the Vessel could have happened during "discharge" (that is unloading of the scrap metal in

---

[6] "Off-hire" days are days in which the Vessel was not in service due to being under repair.

Korea) and that it was also unlikely that the damage could have happened during the voyage. (Santos Dep. Doc. # 19-2 at 38:4-9).  In addition, the record contains a detailed survey of the Vessel and her voyage authored by three surveyors: S.E. Wang, J.W. Lee, and C.S. Yoo. (Doc. # 19-3 at 42-46). The Survey is dated September 1, 2005. (<u>Id.</u>)  As to the "cause of damage" the surveyors report:

> From the survey undertaken and information available, we are of the opinion that the damage to tank top plate of No. 1 FOT center as stated may be reasonably attributable to the tank top plating having contracted with heavy steel structures which was considered to be scrap cargo at the initial stage of loading at bottom at the loading port of Tampa, U.S.A.

(Doc. # 19-3 at 44).[7]

**B.   <u>Meridian's Complaint</u>**

Meridian blames Kinder for the damage to the Vessel and filed a three-count complaint against Kinder in this Court on August 10, 2007. (Compl. Doc. # 1).  In count one, sounding in negligence, Meridian alleges that Kinder "owed Plaintiff and/or [the Vessel] a duty of reasonable care under the circumstances in the loading of the cargo of steel

_____

[7] The surveyors' reference to "FOT" is to the fuel oil tank. In this case, the hole in the tank top of hold number three abutted the fuel oil tank.

scrap aboard [the Vessel]" and breached said duty by:

> (a) failing to exercise reasonable care in loading
> the cargo of scrap; (b) carelessly dumping and/or
> dropping the steel scrap during loading; (c)
> failing to provide proper and competent employees
> in the operation and direction of the crane; (d)
> failing to take proper and adequate precautions in
> not releasing the scrap cargo until it was
> touching the tank top; (e) failing to otherwise
> exercise due care during the loading of the steel
> scrap to avoid damage to the vessel.

(Compl. Doc. # 1 at ¶ 14).

In count two, Meridian alleges that Kinder breached the terms of the "stowage plan" by failing to load cargo in accordance with the stowage plan.  The stowage plan is on file. (Id. at ¶ 6).

In count three, Meridian alleges that Kinder breached the implied warranty of workmanlike performance in performing stevedoring services on the Vessel: "During the loading of steel scrap aboard the Vessel, Kinder . . . failed to properly perform its stevedoring services to load [the Vessel] in a workmanlike manner, resulting in damage to the Vessel when the Defendant's crane operator, under the direction and control of the Defendant, loaded the steel scrap in such a way that it punctured the tank top in hold # 3." (Id. at ¶ 21).

### C.   <u>Other Proceedings</u>

On September 5, 2007, Kinder moved to dismiss counts two and three of the complaint. (Doc. # 6).  After hearing from Meridian, the Court denied the motion to dismiss on October 10, 2007. (Doc. # 8).  On October 15, 2007, Kinder filed its answer and affirmative defenses. (Doc. # 9). On September 25, 2008, Kinder filed its motion for summary judgment. (Doc. # 21).  In support of its motion for summary judgment, Kinder filed the deposition of Captain Franceschi (Doc. # 20) and the deposition of Ivan Santos. (Doc. # 19). On October 27, 2008, Meridian filed its response to the motion for summary judgment. (Doc. # 26).

In its motion for summary judgment, Kinder asserts that "there is <u>no</u> evidence to establish 1) that the damage was caused during loading in Tampa, 2) that Kinder Morgan acted negligently during loading, or 3) that Kinder Morgan breached any contractual obligations." (Doc. # 21 at 1).

In its brief response to Kinder's motion for summary judgment, Meridian points to the survey suggesting that the damage to the Vessel occurred in Tampa during loading, and Meridian requests that this Court either deny the motion for summary judgment or continue the summary judgment

proceedings pursuant to Rule 56(f), Fed.R.Civ.P., because Meridian has not yet taken the deposition of Surveyor Lee. (Doc. # 26 at 4).  Meridian attaches the affidavit of its counsel, David F. Pope, who attests that "he is continuing to work with Mr. Santos and surveyor Lee's employer to obtain affidavit/deposition testimony from surveyor Lee concerning his activities onboard [the Vessel], but that as of the date of this affidavit, a specific date and location for such an appearance by surveyor Lee has not been agreed upon." (Aff. Pope Doc. # 26-2 at ¶ 8).  The Court will address these issues in turn.

## II.  **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to

-11-

be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**III. Analysis**

This Court will begin its analysis by evaluating Meridian's request, pursuant to Rule 56(f), Fed.R.Civ.P., that Kinder's motion for summary judgment be denied or continued until Meridian can obtain either an affidavit or deposition of surveyor Lee.  Rule 56(f), Fed.R.Civ.P., states in pertinent part:

> If a party opposing the motion shows by affidavit
> that, for specified reasons, it cannot present

> facts essential to justify its opposition, the
> court may:
> (1)  deny the motion;
> (2)  order a continuance to enable affidavits to
>      be obtained, depositions to be taken, or
>      other discovery to be undertaken; or
> (3)  issue any other just order.

Fed.R.Civ.P. 56(f).

The Eleventh Circuit has considered the purpose and application of Rule 56(f), Fed.R.Civ.P., on a number of occasions. In <u>Reflectone, Inc. v. Ferrand Optical Co., Inc.</u>, 862 F.2d 841 (11th Cir. 1989), the court explained:

> Rule 56(f) specifically addresses the question of
> summary judgment before discovery has taken place.
> The party opposing summary judgment may move the
> court to permit the discovery necessary to oppose
> the motion.  The party seeking to use rule 56(f)
> may not simply rely on vague assertions that
> additional discovery will produce needed, but
> unspecified, facts, but rather he must
> specifically demonstrate how the postponement of a
> ruling on the motion will enable him, by discovery
> or other means, to rebut the movant's showing of
> the absence of a genuine issue of fact.

<u>Reflectone, Inc.</u>, 862 F.2d at 843.  Furthermore, in <u>Harbert International v. James</u>, 157 F.3d 1271 (11th Cir. 1998), the court expounded upon the requirements for relief under Rule 56(f), Fed.R.Civ.P., as follows:

> A Rule 56(f) motion must be supported by an
> affidavit which sets forth with particularity the
> facts the moving party expects to discover and how
> those facts would create a genuine issue of
> material fact precluding summary judgment.

-13-

> Whether to grant or deny a Rule 56(f) motion for
> discovery requires the court to balance the
> movant's demonstrated need for discovery against
> the burden such discovery will place on the
> opposing party.

Harbert, 157 F.3d at 1280 (internal citations omitted).

In the present case, Meridian's request to postpone the summary judgment proceedings so that Meridian can obtain further evidence comes after the close of discovery. The discovery deadline in this case elapsed on August 1, 2008. In addition, Meridian has not technically complied with the basic requirements of Rule 56(f). Meridian's counsel has filed an affidavit specifically identifying that Meridian seeks to depose Lee, but this affidavit does not "set[] forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." Harbert, 157 F.3d at 1280. However, with some common sense, this Court can anticipate the nature of Lee's testimony because he was behind the survey opining that the damage to the Vessel likely occurred in Tampa, Florida.

Further, this Court recognizes that Meridian seeks to depose an individual residing in a remote location: Busan, Korea. Counsel for Meridian asserts that certain barriers

exist to obtaining surveyor Lee's affidavit or deposition testimony: "[G]iven surveyor Lee's location in Busan, Korea, making arrangements for surveyor Lee to appear for execution of an affidavit and/or a deposition would require Mr. Lee to appear before a required notary and/or court reporter in Seoul, Korea, as video-conferencing and court reporting services are not available in Busan, Korea." (Pope Aff. Doc. # 26-2 at ¶ 7).

Meridian's counsel does not express to the Court an expected time-frame for obtaining Lee's affidavit or deposition, and the Court is mindful that a pretrial conference is currently set to take place in this case on December 9, 2008, and this case is set for a jury trial during the January 2009, trial term. (Doc. # 23). This Court will deny Kinder's motion for summary judgment, but not on the basis of Meridian's vague request to obtain Lee's affidavit or deposition.[8]

---

[8]   In the instance that Meridian is able to propose a reasonable, finite continuance of the pretrial conference and/or trial due to Meridian's scheduling of a deposition with Lee, this Court would be inclined to consider the motion favorably. However, this Court cannot, in good conscience, order an indefinite continuance for a deposition that has not yet been scheduled to take place, especially with a trial set to take place in just over one month.

-15-

This Court denies summary judgment because Kinder has failed to establish the absence of a genuine issue of material fact.  It is undisputed that the Vessel was undamaged prior to the performance of Kinder's stevedoring services in Tampa, Florida.  At some time during or after the initial loading of scrap metal onto the Vessel, a hole developed in the tank top of hold number three.  The parties do not agree as to when the hole developed or as to the identity of the individual or entity who was involved in the creation of the hole.  There is little evidence concerning the creation of the hole, but there is some evidence on both sides.  Meridian has Lee's survey in which he opines that the damage happened upon loading in Tampa, Florida.  Kinder, as stevedore, performed the loading in Tampa, Florida.

As stated by the Eleventh Circuit in <u>Tipton v. Bergroher GMBH-Siegen</u>, 965 F.2d 994 (11th Cir. 1992), "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 998-999 (internal citations omitted).  In

-16-

this case, a jury, rather than this Court, should determine whether Kinder negligently loaded the Vessel with scrap metal by causing a hole to develop in the tank top of hold number three. Further, a jury should determine whether Kinder breached the terms of the stowage plan and whether Kinder breached the implied warranty of workmanlike performance in performing stevedoring services on the Vessel. And, on the record before the Court, a reasonable jury could find in favor of Meridian. Therefore, Meridian's case survives Kinder's motion for summary judgment, and Kinder's motion for summary judgment is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Kinder Morgan Bulk Terminal, Inc.'s Motion for Summary Judgment (Doc. # 21) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>19th</u> day of November, 2008.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

-17-